EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| McNeil Healthcare, LLC<br><br>Peticionario<br><br>v.<br><br>Municipio de Las Piedras *et al.* [I]<br><br>Recurridos | Certiorari<br><br>2021 TSPR 24<br><br>206 DPR ____ |

Número del Caso:  CC-2019-533

Fecha: 26 de febrero de 2021

Tribunal de Apelaciones:

Panel IV

Abogados de la parte peticionaria:

Lcdo. Juan A. Marqués Díaz
Lcdo. Rubén Muñiz Bonilla
Lcdo. Britt E. Arrieta Rivera

Abogado de la parte recurrida:

Lcdo. Eduardo H. Martínez Echevarría

Materia: Derecho Probatorio – El privilegio CPA-cliente dispuesto en la Regla 504 de Evidencia aplica a personas jurídicas y les otorga el privilegio de rehusar revelar o impedir que otra persona revele, las comunicaciones confidenciales habidas entre sus oficiales y los contadores públicos autorizados de los cuales obtuvo servicios profesionales. Lo determinante para la aplicación de este privilegio no es la calidad en la que el CPA lleva a cabo las gestiones profesionales a favor de la persona jurídica, sino que esa comunicación interna contenga evaluaciones profesionales de índole confidencial a favor del cliente y que sean realizadas dentro de un marco de confidencialidad que muy difícilmente pudiera presumirse que tenía el fin de ser divulgada a terceras personas. De otro lado, debido a que la Regla 504 no excluye de protección las comunicaciones realizadas entre contadores públicos autorizados que brindan servicios a las empresas que los emplean, y ante la similitud entre este privilegio y el de abogado-cliente, dichas comunicaciones deben estar protegidas al igual que lo estarían si se tratara de un abogado corporativo ("in-house counsel").

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

McNeil Healthcare, LLC

      Peticionario

         v.               CC-2019-533      *Certiorari*

Municipio de Las Piedras *et al.* [I]

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 26 de febrero de 2021.

El presente recurso nos brinda la oportunidad de expresarnos por primera vez sobre la aplicabilidad en nuestra jurisdicción del privilegio contador público autorizado-cliente (privilegio CPA-cliente), estatuido en la Regla 504 de las Reglas de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI. Específicamente, corresponde evaluar su naturaleza y alcance sobre comunicaciones efectuadas entre el cliente, en este caso una persona jurídica, y contadores públicos autorizados contratados por ésta.

Adelantamos que, tanto el desarrollo histórico del referido privilegio en nuestro ordenamiento jurídico, el derecho vigente, y, particularmente, el ámbito de

confidencialidad en que ocurrieron los eventos en el caso de autos, justifican proteger la confianza y la comunicación amplia, libre y franca entre estos profesionales y sus clientes. Veamos.

I

En julio de 2016, McNeil Healthcare, LLC (McNeil)[1] presentó una demanda en contra del Municipio de Las Piedras (Municipio), en virtud de la cual impugnó unas notificaciones de este último relacionadas con presuntas deficiencias en el pago de patentes municipales durante los años fiscales 2014-2015 y 2015-2016.[2]

Contestada la demanda por el Municipio, el pleito continuó su curso ordinario y, posteriormente, se dio inicio al descubrimiento de prueba. Luego de múltiples incidentes procesales,[3] el Municipio presentó varios pliegos de interrogatorios y requerimientos de producción de documentos. En lo pertinente, el Municipio le requirió a McNeil que produjera toda documentación intercambiada por el CPA José Luis Rivera Matos (CPA Rivera Matos) —quien ocupaba las posiciones de *Tax Manager* para todas las subsidiarias de Johnson & Johnson en Puerto Rico y de Asistente del Secretario de McNeil—; y la CPA Brenda Ramírez (CPA Ramírez) —quien, por su parte, fungía como

---

[1]    McNeil Healthcare, LLC (McNeil) es una subsidiaria en Puerto Rico de la corporación multinacional Johnson & Johnson.

[2]    *Demanda*, Apéndice, págs. 50-62.

[3]    Entre los incidentes ocurridos, cabe resaltar las modificaciones al calendario debido al paso de los Huracanes Irma y María y otra controversia de índole probatorio suscitada entre las partes, expedida para revisión por este Tribunal con el alfanumérico CC-2018-502.

*Tax Compliance Manager* para todas las subsidiarias de Johnson & Johnson en Puerto Rico, incluyendo a McNeil—; con otros empleados de McNeil que hubiesen intervenido con las transacciones contables impugnadas.[4] En detalle, el Municipio requirió la siguiente información:

.    .    .    .    .    .    .    .

> 13.    <u>Produzca e identifique</u> copia de todo documento, escrito o grabación cursado entre el Sr. José L. Rivera y cualquier otra(o) oficial, agente, empleado, o contratista de McNeil relacionada a la determinación de ingreso bruto de McNeil y/o el contenido o alcance de la información […] de sus declaraciones de volumen de negocios para los años fiscales 2014-15 y 2015-16.

.    .    .    .    .    .    .    .

> 14. <u>Produzca e identifique</u> copia de todo documento, escrito o grabación cursado entre el Sr. José L. Rivera y cualquier otra(o) oficial, agente, empleado, o contratista de McNeil relacionada a la determinación de ingreso bruto de McNeil y/o el contenido o alcance de la información de los Estados Financieros de McNeil para los años de contabilidad terminados el 29 de diciembre de 2013 y el 28 de diciembre de 2014.

.    .    .    .    .    .    .    .

> 15. <u>Produzca e identifique</u> copia de todo documento, escrito o grabación cursado entre la Sra. Brenda Ramírez y cualquier otra(o) oficial, agente, empleado, o contratista de McNeil relacionada a la determinación de ingreso bruto de McNeil y/o el contenido o alcance de la información de sus declaraciones de volumen de negocios para lo[s] […] años fiscales 2014-15 y 2015-16.

.    .    .    .    .    .    .    .

(Subrayado en el original).[5]

---

[4]    *Contestación y/u objeciones a segundo interrogatorio y requerimiento para la producción de documentos*, Apéndice, págs. 305-321.

[5]    <u>Íd.</u>, págs. 313-314.

El 12 de febrero de 2018, McNeil —por conducto del CPA Rivera Matos en su carácter de Asistente del Secretario de McNeil— informó en sus contestaciones y objeciones a los interrogatorios y requerimientos de prueba cursados por el Municipio que sólo halló <u>un correo electrónico entre el CPA Rivera Matos y la CPA Ramírez</u>, pero declinó producirlo por entender que estaba cobijado por el privilegio CPA-cliente consignado en la Regla 504. Así argumentó sus objeciones al descubrimiento de dicha comunicación:

<u>Contestación al Interrogatorio #13</u>:

Se objeta al Interrogatorio Núm. 13 por ser confuso y por ser amplio y oneroso. No obstante, se informa que he revisado mis récords y no he encontrado ningún documento o comunicación cursado entre este servidor [CPA Rivera Matos] y algún oficial, agente, empleado, o contratista de McNeil relacionada a la determinación de ingreso bruto de McNeil para los años 2014-15 y 2015-16. Tampoco encontré algún documento o comunicación de McNeil relacionada a la determinación del ingreso bruto de McNeil sobre el contenido o alcance de la información de los Estados Financieros de McNeil para los años 2014-15 y 2015-16.

. . . . . . . .

<u>Contestación al Interrogatorio #14</u>:

Se objeta al Interrogatorio Núm. 14 por ser confuso y por ser amplio y oneroso. **No obstante, se informa que sólo pude encontrar un correo electrónico entre la Sra. Brenda Ramírez y yo [CPA Rivera Matos] que toca el tema objeto de este Interrogatorio, en relación a mi evaluación de la declaración de volumen de negocios, pero que está protegido por el privilegio contador público autorizado-cliente bajo la Regla 504 de las [Reglas] de Evidencia.**

. . . . . . . .

<u>Contestación al Interrogatorio #15</u>:

Se objeta al Interrogatorio Núm. 15 por ser amplio y oneroso y por solicitar información impertinente a la presente reclamación. No obstante, véase la respuesta aquí al Interrogatorio Núm. 14.

. . . . . . . .

(Subrayado en el original y negrillas suplidas).**6**

Al día siguiente, el Municipio le envió una carta a McNeil solicitándole que proveyera contestaciones suplementarias por considerar que las explicaciones ofrecidas eran "evasivas e incompletas".**7** El Municipio adujo, en esencia, que el correo electrónico en cuestión no estaba cubierto por el privilegio CPA-cliente, pues "[a] tenor con las alegaciones del [CPA] Rivera [Matos], la relación entre éste, la [CPA] Ramírez y McNeil no es una de cliente-contador público autorizado y no existe la […] 'comunicación confidencial' objeto de privilegio protegido por la Regla 504 de [E]videncia".**8**

Subsiguientemente, McNeil respondió a la carta sosteniéndose en su reclamo de que el correo electrónico solicitado era privilegiado.**9**

Insatisfecho con la respuesta de McNeil, el 27 de febrero de 2018, el Municipio presentó ante el Tribunal de Primera Instancia una *Solicitud de orden para compeler*

---

**6** <u>Íd.</u>

**7** Carta de 13 de febrero de 2018, Apéndice, págs. 322, 325-327.

**8** <u>Íd.</u>, pág. 327.

**9** Carta de 13 de febrero de 2018, Apéndice, págs. 329, 332-335.

*contestaciones a interrogatorios objetados* (solicitud para compeler), con el fin de que se obligara a McNeil a producir el correo electrónico cursado entre los contadores públicos autorizados.[10] Adujo en primer término que la invocación del privilegio CPA-cliente por parte de McNeil era frívola y temeraria.[11] Reconoció que en la deposición tomada al CPA Rivera Matos, éste identificó a la CPA Ramírez como su subalterna.[12] Añadió, además, que:

> 10. En las declaraciones para los años fiscales 2014-2015 y 2015-2016, el Sr. Rivera Matos, en representación de McNeil, certificó bajo juramento que el volumen de negocios declarado fue calculado siguiendo las disposiciones de la Ley de Patentes Municipales y "que los anejos financieros que se acompañan están de acuerdo a los libros de contabilidad de este negocio al 29 de diciembre de 2013 y la copia de las páginas o anejos de la planilla de contribución sobre ingresos donde se detallan los ingresos brutos y gastos de operación son copia fiel y exacta de los radicados en el Departamento de Hacienda".
>
> 11. Al igual que el Sr. Rivera Matos, la Sra. Ramírez suscribe declaración ante el Municipio de Las Piedras como oficial autorizado de McNeil. […].[13]

Más adelante, el Municipio especificó que "la comunicación confidencial a la que se refiere este privilegio es aquella entre un CPA, incluyendo a sus asociados, ayudantes y empleados y su cliente con alguna

---

[10] *Solicitud de orden para compeler contestaciones a interrogatorios objetados*, Apéndice, págs. 289-304.

[11] Íd., págs. 290, 293.

[12] Íd., pág. 290. Véase extracto Deposición, Apéndice, págs. 378-380.

[13] *Solicitud de orden para compeler contestaciones a interrogatorios objetados*, Apéndice, pág. 291.

gestión relacionada dentro de una relación profesional del ejercicio de la contabilidad" y cuya "comunicación confidencial es la que la parte comparte con un CPA en la confianza de que no será divulgada a terceras personas, salvo las necesarias para producir el propósito de la comunicación".[14] Al respecto, argumentó lo siguiente:

> De la exigua información que provee [McNeil], lo único que se puede colegir es que aquí se trata de información cursada entre empleados que actúan dentro de un proceso **deliberativo interno**, ambos representando a la empresa. Estos son los empleados que generan y/[u] originan la información misma y no son terceros que actúan dentro de la relación profesional de CPA-cliente que requiere la regla. Puesto de manera sencilla, no hay relación profesional alguna puesto que estos dos empleados no están expuestos a que la empresa le reclame por impericia profesional pues actúan a nombre y representación de la empresa misma. (Énfasis suplido).[15]

A su vez, señaló que la comunicación en controversia no está cobijada por el privilegio CPA-cliente, debido a que son de aplicación las excepciones dispuestas en los apartados (c)(1) y (c)(6) de la Regla 504, por considerar que es información que debe ser divulgada por mandato de ley y "por potencialmente tratarse de una comunicación conducente a la perpetración de un fraude",[16] respectivamente. Conforme a ello, el Municipio alegó que "existe un interés público apremiante de fiscalizar, auditar e investigar el pago de contribuciones, no sólo

---

[14]  Íd., pág. 299.

[15]  Íd., pág. 300.

[16]  Íd., pág. 301.

para el cobro de éstas, sino para detectar fraude y encausar a aquellos contribuyentes que intencionalmente pretendan derrotar las contribuciones dispuestas por ley".[17]  Además, arguyó que no existía privilegio CPA-cliente, sino que el caso versaba más bien sobre la determinación y "motivaciones del [CPA Rivera Matos] para omitir […] ciertas declaraciones de volumen de negocio".[18] Argumentó que

> las "**motivaciones y sus discusiones con su subalterna son 'constancias' extremadamente importantes y pertinentes al presente pleito toda vez que podrían develar si la omisión de dicho ingreso es una inocente en la que realmente existe una diferencia de criterio o, por el contrario, si se trata del producto de maquinaciones para la comisión de fraude".**   (Énfasis suplido).[19]

Finalmente, recalcó poseer un interés público apremiante de fiscalizar y cobrar las contribuciones.[20]

El 20 de noviembre de 2018, McNeil se opuso a la solicitud para compeler del Municipio.[21]  En su oposición McNeil alegó, en resumen, que la relación para la cual se invocó la protección de una comunicación confidencial está comprendida dentro de la definición de la Regla 504.[22] Asimismo, esbozó que, debido a que el privilegio CPA-cliente guarda cierta similitud con el de abogado-cliente,

---

[17]  Íd., pág. 302.

[18]  Íd.

[19]  Íd., págs. 302-303.

[20]  Íd., pág. 303.

[21]  *Oposición a "Solicitud de orden para compeler contestaciones a interrogatorios objetados"*, Apéndice, págs. 421-437.

[22]  Íd., pág. 432.

deben salvaguardarse las comunicaciones para los primeros profesionales, así como se ha hecho con toda fuerza y vigor para los últimos.[23] También, mencionó McNeil que ha sido precisa y consistente en la invocación del privilegio y en la aseveración de los fundamentos que justifican su aplicación.[24] Afirmó que, "los asuntos en este caso no tienen que ver con alegaciones de fraude".[25] Añadió que en la controversia de epígrafe "se impugna la errónea notificación de deficiencias por el Municipio en detrimento de [ésta]".[26] Sobre ese particular, fundamentó su posición en que la notificación final del Municipio, "no incluyó expresión alguna sobre fraude".[27]

El Tribunal de Primera Instancia declaró *no ha lugar* la oposición de McNeil.[28] Subsiguientemente, McNeil presentó una moción de reconsideración de esa determinación,[29] la cual el foro primario denegó.[30]

Inconforme, McNeil presentó una solicitud de *certiorari* ante el Tribunal de Apelaciones.[31] Señaló, en síntesis, que erró el foro primario al no reconocerle el privilegio CPA-cliente a una comunicación realizada en el

---

[23]  Íd., págs. 430-432.

[24]  Íd., pág. 432.

[25]  Íd., pág. 435.

[26]  Íd.

[27]  Íd.

[28]  *Notificación*, Apéndice, pág. 486.

[29]  *Moción de reconsideración*, Apéndice, pág. 488.

[30]  *Notificación*, Apéndice, pág. 495.

[31]  *Solicitud de certiorari al Tribunal de Apelaciones*, Apéndice, pág. 21.

ejercicio de la profesión de la contabilidad entre dos (2) contadores públicos autorizados que rendían servicios profesionales a su cliente.[32]

Posteriormente, el Municipio compareció ante el foro apelativo intermedio en oposición a la solicitud presentada por McNeil.[33] Éste, además de repetir los argumentos esbozados en su solicitud para compeler ante el foro primario, añadió que la comunicación en cuestión no estaba cobijada por el privilegio CPA-cliente debido a que era de aplicación la excepción dispuesta en la Regla 504 (c)(4), respecto a la no disponibilidad del privilegio en procedimientos civiles.[34]

A través de una *Resolución* emitida el 14 de mayo de 2019, el foro apelativo intermedio denegó considerar el recurso en sus méritos, por entender que el mismo no reunía los criterios de expedición de los autos de *certiorari*, esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *infra*.[35]

En desacuerdo, McNeil sometió una moción de reconsideración,[36] la cual fue declarada *no ha lugar* por el foro apelativo intermedio.[37]

---

[32] Íd., pág. 31.

[33] *Memorando en oposición a expedición de certiorari*, Apéndice, pág. 512.

[34] Íd., pág. 537.

[35] *Resolución* del Tribunal de Apelaciones, Apéndice, pág. 3.

[36] *Moción de reconsideración*, Apéndice, pág. 7.

[37] *Resolución* del Tribunal de Apelaciones, Apéndice, pág. 20.

Insatisfecha con dicho dictamen, McNeil acude ante este Tribunal mediante el presente recurso de *certiorari* y plantea que:

> Erró el [Tribunal de Apelaciones] al no expedir el auto solicitado, dejando en vigor una determinación del [Tribunal de Primera Instancia] que niega el derecho de McNeil (una entidad jurídica) a reclamar el privilegio CPA-cliente en cuanto a una comunicación confidencial intercambiada entre dos contadores públicos autorizados relacionada a los servicios profesionales que estos realizan para su cliente McNeil.

Planteada así la controversia, expedimos el auto solicitado, y con el beneficio de la comparecencia de las partes, procedemos a disponer del presente recurso.

## II

### A. Criterios para la expedición del auto de *certiorari*

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. IG Builders *et al.* v. BBVAPR, 185 DPR 307, 337-338 (2012).

Con esos fines, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece los preceptos que regulan la expedición del recurso discrecional de *certiorari*, por parte del Tribunal de Apelaciones, para la revisión de determinaciones interlocutorias del Tribunal de Primera Instancia. En lo pertinente, la regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de

una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. **No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de** decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, **asuntos relativos a privilegios evidenciarios,** anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis suplido). Íd.

Las disposiciones de la regla establecen de manera pormenorizada ciertas instancias en las que el foro apelativo intermedio puede revisar dictámenes interlocutorios del foro primario. Asimismo, enumera otras instancias mediante las cuales, a modo de excepción, el foro apelativo intermedio podrá revisar órdenes o resoluciones interlocutorias de varios asuntos dictadas por el foro primario, entre éstos, **privilegios probatorios.** Íd. Véase Scotiabank v. ZAF Corp. *et al.*, 202 DPR 478, 486-487 (2019); Job Connection Center v. Sups. Econo, 185 DPR 585, 594 (2012); IG Builders *et al.* v. BBVAPR, *supra*, págs. 336-338.

De igual manera, y con el propósito de que el foro apelativo intermedio pueda ejercer de forma juiciosa y comedida su facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones de Puerto Rico, 4 LPRA Ap. XXII-B, enmarca los criterios que debe tomar

dicho foro al atender una solicitud de expedición de un auto de *certiorari*. Véase <u>Scotiabank v. ZAF Corp. *et al.*</u>, *supra*, pág. 486 esc. 12; <u>IG Builders *et al.* v. BBVAPR</u>, *supra*, págs. 338-339. En detalle, la regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> **(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro). 4 LPRA Ap. XXII-B, R. 40.

Luego de detallar las cuestiones relativas a la expedición del recurso de *certiorari* por parte del Tribunal de Apelaciones, corresponde ahora examinar el

marco jurídico aplicable a los méritos de la controversia ante nuestra consideración.

## B. El descubrimiento de prueba y los privilegios

Es una cuestión de gran arraigo en nuestro ordenamiento jurídico que el descubrimiento de prueba es amplio y liberal y se extiende a cualquier materia que no esté protegida por algún privilegio y que sea pertinente al asunto en controversia. Casasnovas *et al*. v. UBS Financial *et al.*, 198 DPR 1040, 1054 (2017); Ponce Adv. Med. v. Santiago González *et al.*, 197 DPR 891, 898 (2017); Alvear Maldonado v. Ernst & Young LLP, 191 DPR 921, 925 (2014).

Al respecto, la Regla 23.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone lo siguiente:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) En general.- Las partes podrán hacer descubrimiento sobre cualquier materia, **no privilegiada**, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. […]. (Énfasis suplido). Íd.

En ese sentido, surgen dos limitaciones fundamentales para el proceso de descubrimiento de prueba de la Regla 23.1. "En primer lugar, es imperioso que el asunto que se pretende descubrir sea pertinente a la controversia que se dirime. Segundo, la materia que se pretende descubrir, aunque sea pertinente, **no puede ser privilegiada o quedará excluida del alcance del descubrimiento de prueba**". (Énfasis suplido). Ponce Adv. Med. v. Santiago González *et al.*, *supra*, págs. 898-899.

De otro lado, la Regla 23.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece acerca del reclamo de privilegios, en su parte pertinente, lo siguiente:

> (a) Información retenida. Cuando una parte retiene información requerida, reclamando que es materia privilegiada o protegida en contemplación de la preparación para el juicio, deberá hacer su reclamo de manera expresa y fundamentada especificando la naturaleza de los documentos, de las comunicaciones o de los objetos no producidos o revelados, de forma que, sin revelar información privilegiada, las demás partes puedan evaluar la aplicabilidad del privilegio o protección, y expresarse sobre éstos.

Ahora bien, una parte no podrá objetar un requerimiento de descubrimiento de prueba a menos que invoque oportunamente un privilegio específico reconocido en nuestras Reglas de Evidencia. Ponce Adv. Med. v. Santiago González *et al.*, *supra*, pág. 899 (citando a García Rivera *et al.* v. Enríquez, 153 DPR 323, 333 (2001)). Esto es así porque, por su naturaleza y función, los privilegios probatorios "rompen con el propósito principal de las Reglas de Evidencia: 'el descubrimiento

de la verdad en todos los procedimientos judiciales'". *Ponce Adv. Med. v. Santiago González et al.*, *supra*, pág. 899. Véanse, también: Regla 102 de Evidencia de 2009, 32 LPRA Ap. VI; *Pagán et al. v. First Hospital*, 189 DPR 509, 518-519 (2013). En otras palabras, "'por consideraciones de política pública', el privilegio excluye prueba que de otro modo sería pertinente y descubrible". *Ponce Adv. Med. v. Santiago González et al.*, *supra*, pág. 899 (citando a E.L. Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y federales*, San Juan, Pubs. JTS, 1998, T. I, pág. 185). De esa manera, se adelantan **"valores e intereses sociales que por consideraciones de política pública se estiman superiores a la búsqueda de la verdad"**. (Énfasis suplido). *Casasnovas et al. v. UBS Financial et al.*, *supra*, pág. 1055. Véase, también, *Ponce Adv. Med. v. Santiago González et al.*, *supra*, pág. 899.

Con relación al alcance de la protección otorgada a materia privilegiada por consideraciones de interés público, y sus excepciones, hemos citado con aprobación las siguientes expresiones del profesor Chiesa Aponte:

> Se estima que el sacrificio de evidencia con claro valor probatorio se justifica para adelantar un alto interés público[…]. Mientras más alto sea el interés público que se quiere adelantar con el privilegio, mayor será su alcance y menor las excepciones al privilegio. Mientras menor sea el interés público que se quiere adelantar, de menor alcance será el privilegio y más las excepciones […]. *Pagán v. First Hospital*, *supra*, pág. 518 (citando a E.L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009*, San Juan, Pubs. JTS, 2009, pág. 149).

Dado a que los privilegios impiden el descubrimiento de ciertos actos, hechos o comunicaciones, los tribunales interpretarán restrictivamente la existencia de éstos. Véanse: Regla 518 de Evidencia de 2009, 32 LPRA Ap. VI; Ponce Adv. Med. v. Santiago González *et al.*, *supra*, pág. 899. De igual modo, su concesión no será automática, sino que deberán invocarse de manera certera y oportuna. Íd., pág. 900. Por cuanto, la parte que se considere poseedora de cierta materia privilegiada cuyo descubrimiento se procura, tan pronto le sea solicitada dicha información, deberá:

> (1) objetar la producción de los documentos, las comunicaciones o los objetos requeridos; (2) indicar expresamente el privilegio específico que pretende invocar; (3) exponer con particularidad los hechos concretos en los que se basa la aplicabilidad del privilegio; (4) fundar con claridad la existencia de los elementos legales del privilegio en cuestión, y (5) describir la naturaleza de la evidencia no producida de forma tal que, sin revelar la información privilegiada, permita a otras partes evaluar su reclamación. Íd. Véase, además, Regla 23.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V.

Ante discrepancias entre las partes en torno a la existencia y alcance del privilegio "el tribunal tendrá que resolver si el poseedor del privilegio estableció, mediante **preponderancia de la prueba**, los elementos del privilegio que invoca". (Énfasis suplido). Ponce Adv. Med. v. Santiago González *et al.*, *supra*, pág. 900. Consiguientemente, demostrados los elementos del privilegio invocado mediante el referido estándar

probatorio, su aplicación dependerá de su clasificación como uno absoluto o condicional. Los privilegios absolutos son aquellos que, una vez se cumplan los requisitos que lo constituyen, eliminan la discreción judicial para obligar la divulgación de la materia protegida. Íd., págs. 900-901 (citando a Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y federales, op. cit.*, pág. 193). "Por otro lado, los privilegios condicionales son aquellos cuya aplicación puede ceder ante intereses sociales, aunque se cumpla con los requisitos que lo constituyen". Ponce Adv. Med. v. Santiago González *et al.*, *supra*, pág. 901.

Consecuentemente, le corresponderá a la parte que alega o reclama el privilegio "establecer *prima facie* que concurren los elementos necesarios para su aplicación". Casasnovas *et al.* v. UBS Financial *et al.*, *supra*, pág. 1056. Es decir, para que pueda reconocerse una comunicación como privilegiada deberá demostrar que están presentes estas cuatro condiciones fundamentales, a saber:

> **1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; 2) este elemento de confidencialidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; 3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida y 4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito.** (Énfasis suplido). Ortiz v. Meléndez, 164 DPR 16, 28 (2005); García Negrón v. Tribunal Superior, 104 DPR 727, 734 (1976) (citando a J.H. Wigmore, *Wigmore on Evidence*, Toronto, Little, Brow and

Company, Vol. VIII, Sec. 2285, pág. 527 (revisado por J.T. McNaughton, 1961)).

Luego de esbozar los principios generales aplicables a todo privilegio probatorio, pasemos a examinar la evolución que ha tenido el privilegio CPA-cliente tanto en Puerto Rico como en Estados Unidos.

## C. El privilegio CPA-cliente

### i. Puerto Rico

La Ley de Contabilidad Pública de 1945, Ley Núm. 293 de 15 de mayo de 1945 (Ley Núm. 293), según enmendada, 20 LPRA sec. 771 *et seq.*, es la legislación que regula la profesión de contador público autorizado en Puerto Rico. Fue en ese estatuto, y no en un cuerpo de normas probatorias, donde se incorporó por primera vez en nuestro ordenamiento la protección a las comunicaciones confidenciales de contadores públicos autorizados. En específico, el privilegio CPA-cliente fue estatuido en la Sección 19 de la Ley Núm. 293 y dicha disposición establecía que: "Ninguna corte exigirá a ningún contador público autorizado o contador público que divulgue información o evidencia obtenida por él en su carácter confidencial como tal". 20 LPRA ant. sec. 790.

Posteriormente, en Ramírez Mas v. Tribunal Superior, 95 DPR 415 (1967), un auto expedido, anulado y devuelto al Tribunal de Primera Instancia para la continuación de los procedimientos, fue donde por primera vez este Tribunal reconoció en un escolio la existencia en nuestra jurisdicción del privilegio CPA-cliente, según consagrado

en la Sección 19 de la Ley Núm. 293. <u>Ramírez Mas v. Tribunal Superior</u>, *supra*, pág. 419 esc. 3.

Luego, en <u>Rodríguez v. Scotiabank de Puerto Rico</u>, 113 DPR 210 (1982), ante una controversia para descubrir información contenida en planillas de contribución sobre ingresos, en lo pertinente a la controversia ante nosotros, este Foro destacó que las Reglas de Evidencia de 1979 no le reconocían a las planillas de contribución sobre ingresos como un privilegio en su lista y, otra vez en un escolio, recalcó que en la revisión de 1979 se omitió la inclusión del privilegio otorgado por la Ley Núm. 293 a los contadores públicos. <u>Íd.</u>, pág. 214 esc. 1.

Ante la insuficiencia de detalles en la reglamentación imperante entonces sobre el privilegio CPA-cliente, el profesor Díaz Olivo abogó por su inclusión en las Reglas de Evidencia, entre otras razones, "por la importancia que tiene para el desarrollo efectivo de la relación contador-cliente". C.E. Díaz Olivo, *El privilegio contador-cliente, ¿un super privilegio?*, 58 Rev. Jur. UPR 77, 133 (1989). Esbozó que la adopción en términos absolutos de un privilegio —en este caso, el establecido por la Ley Núm. 293— lo cual constituye una excepción a la regla general de que toda persona viene obligada a testificar, "representa ciertamente la expresión de una fuerte política pública en favor de la confidencialidad de la comunicación entre el cliente y su contador". Díaz Olivo, *supra*, pág. 112. Sin embargo, promovió que se adoptara una interpretación restrictiva del privilegio, dado que,

"[d]e lo contrario, estaríamos hablando de un s[ú]per-
privilegio que coloca[ría] la relación contador-cliente en
un sitial que se le ha negado a otras relaciones
confidenciales de igual importancia". Íd., pág. 113.

Varios años después, en el contexto de una
controversia acerca de la validez de las cláusulas de no
competencia entre un expatrono y un contador público
autorizado, **enfatizamos** que "nuestro ordenamiento ha
reconocido la importancia de fomentar [la relación CPA-
cliente] al conceder un privilegio mediante la Ley [Núm.
293]". Arthur Young & Co. v. Vega III, 136 DPR 157, 181
(1994). Al describir la naturaleza de los servicios
profesionales que ofrece un contador público autorizado,
**resaltamos** lo siguiente:

> El contador público autorizado realiza
> tres (3) funciones principales: auditoría o
> intervención de cuentas, asesoría
> contributiva y asesoría gerencial o
> financiera.[38]
>
> Como auditor, este profesional debe
> determinar, previo análisis de los libros y
> registros de la empresa, si los estados
> financieros de la entidad reflejan
> razonablemente su situación financiera y sus
> resultados operacionales. C.E. Díaz
> Olivo, *El privilegio contador-cliente, ¿un
> s[ú]per privilegio?*, 58 Rev. Jur. U.P.R. 77,
> 83 (1989).
>
> El contador que actúa
> como asesor contributivo de su cliente le
> orienta sobre el impacto contributivo de sus

---

[38] Entre otras funciones, tales como: "planificación financiera de
individuos, asesoría a instituciones gubernamentales y a asociaciones
sin fines de lucro, educación, y orientación a la comunidad". Arthur
Young & Co. v. Vega III, 136 DPR 157, 181 esc. 21 (1994) (citando *El
CPA: asesor para los pequeños negocios*; *The CPA as Personal Financial
Planner*; *The CPA as Management Consultant*; American Institute of
Certified Public Accountants, What Does a CPA Do?, 1986).

transacciones. También le ayuda en la preparación de las planillas contributivas y lo representa en los procedimientos administrativos en el Departamento de Hacienda, en el Servicio de Rentas Internas federal, o en procedimientos judiciales en el Tribunal Federal de Contribuciones. Díaz Olivo, *supra*, págs. 83 y 88.

Como consultor gerencial o financiero, el contador evalúa la política sobre inventarios de la empresa, diseña e implementa sistemas de contabilidad y de procesamiento de información, prepara presupuestos, y orienta sobre el manejo de personal y planificación financiera, entre otras labores.

Dentro de esta relación profesional, el contador tiene acceso ilimitado a los libros, a los registros, a las facturas y a los demás documentos del cliente. Así adquiere conocimiento de detalles sensitivos del negocio de su cliente. De lo anterior se desprende que la relación entre el contador público autorizado (sea éste empleado de una firma o dueño de su propio negocio) y su cliente requiere contacto personal frecuente y una estrecha confianza. **Se trata, pues, de una relación profesional de naturaleza fiduciaria.** (Escolios omitidos y negrillas suplidas). Arthur Young & Co. v. Vega III, *supra*, págs. 177-179.

Citando al profesor Díaz Olivo en un escolio, resaltamos el grado de confidencialidad que muchas veces impera en las comunicaciones compartidas entre estos profesionales y sus clientes. Al respecto, consignamos que

[n]o es extraño que un contador se entere de fórmulas comerciales confidenciales, planes, estrategias y diseños futuros, costos de producción, listados de clientes, tensiones y conflictos internos, administración ineficiente, violaciones de ley, fusiones o compras de negocios contempladas, entre otras cosas. Mucha de esta información no tiene relación ni es pertinente en ocasiones a la labor

específica que en esos momentos realiza el contador. Sin embargo, puede ser vital a la propia existencia de la empresa. Íd., pág. 178 esc. 23 (citando a Díaz Olivo, *supra*, pág. 87).

Al mismo tiempo, expresamos que en aras de proteger el interés público que rodea la relación CPA-cliente "—tan similar a la existente entre el abogado y su cliente—" era aconsejable proteger la libertad del público de seleccionar al profesional de su confianza, lo que a su vez "facilita el libre flujo de información entre ellos". Arthur Young & Co. v. Vega III, *supra*, pág. 180. Sobre lo anterior, el Tribunal puntualizó que

> **[e]sto no sólo beneficia a las partes involucradas, sino también al interés público que permea la función social de esa profesión. La necesidad de un libre y amplio flujo de información entre el contador y su cliente es indispensable en todas sus facetas.** Como auditor, si el cliente oculta información, existe el peligro de que el profesional no lo detecte, pues en su intervención examina solamente una muestra de las transacciones de la empresa auditada. De esta forma, el descubrimiento de errores e irregularidades muchas veces depende de la candidez del cliente hacia su contador público autorizado.[…] La necesidad de confianza plena en la relación es patente también en sus facetas de asesoría contributiva, gerencial y financiera. En éstas el contador es representante de su cliente y la eficiencia y efectividad de su trabajo depende del adecuado conocimiento de los hechos y de las transacciones del cliente. (Énfasis nuestro). Íd., pág. 180 esc. 26. (citando a Díaz Olivo, *supra*, pág. 86).

Meses después, mediante la Ley Núm. 124-1994 (Ley Núm. 124-1994), se eliminó el privilegio CPA-cliente de la Ley Núm. 293, y se incorporó en la Regla 25-A de Evidencia de

1979.[39]   32 LPRA ant. sec. Ap. IV, R. 25-A.   A continuación, citamos la Exposición de Motivos que develan las razones legislativas que motivaron este cambio:

---

[39]   Regla 25-A. Relación contador público autorizado y cliente.

(A) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:

(1) Cliente — persona natural o jurídica que consulta a un contador público autorizado con el propósito de contratarle o de obtener servicios en su capacidad profesional.

(2) Comunicación confidencial — aquella comunicación habida entre un contador público autorizado y su cliente, incluyendo a sus asociados, asistentes y empleados de oficina en relación a alguna gestión profesional, realizada en el ejercicio de la profesión de contabilidad basada en la confianza de que no será divulgada a terceras personas, salvo a aquellas que sea necesario para llevar a efecto los propósitos de la comunicación.

(3) Contador público autorizado — todo ciudadano que posea una licencia para dedicarse a la práctica de la contabilidad pública en Puerto Rico expedida por la Junta de Contabilidad, según se define en la Ley de Contabilidad Pública, secs. 771 *et seq.* del Título 20.

(B) Sujeto a lo dispuesto en esta regla, el cliente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar[] revelar, y de impedir que otro revele, una comunicación confidencial entre él y su contador público autorizado. El privilegio puede ser invocado sólo por el poseedor del privilegio, que es el cliente.

(C) No existe privilegio bajo esta regla si:

(1) Los servicios al contador público autorizado fueron solicitados y obtenidos para permitir o ayudar a cualquier persona a cometer o planear la comisión de un delito, un acto torticero o un fraude.

(2) La comunicación es pertinente a una controversia relativa a una

En el derecho puertorriqueño, los privilegios reconocidos están codificados en las Reglas de Evidencia para el Tribunal General de Justicia, en vigor desde el 1ro de octubre de 1979. En ellas se omitió el privilegio reconocido a los contadores públicos autorizados, por lo que permaneció vigente la Sección 19 de la Ley Núm. 293 de 15 de mayo de 1945.

La necesidad de una adecuada y lógica codificación de nuestras reglas requiere que

---

violación por el contador público autorizado de un deber que surja de la relación contador público autorizado y cliente.

(3) La comunicación es pertinente a una materia de común interés para dos o más clientes del contador público autorizado, en cuyo caso un cliente no puede invocar el privilegio contra los otros dos.

(4) El contenido de la comunicación se le requiere en el curso de un procedimiento civil o penal bajo la "Ley de Armas", Ley Núm. 17 de 19 de enero de 1951, según enmendada; "Ley de Sustancias Controladas", Ley Núm. 4 de 23 de junio de 1971, según enmendada; "Ley de Explosivos", Ley Núm. 134 de 28 de junio de 1969, según enmendada; "Ley Contra el Crimen Organizado", Ley Núm. 33 de 13 de julio de 1978, según enmendada; y las disposiciones del Código Penal, Ley Núm. 115 de 22 de julio de 1974, según enmendada; y las leyes especiales sobre estas materias.

(5) La comunicación entre el contador público autorizado y su cliente está sujeta a las normas que regulan la profesión de contabilidad requieren que se divulguen [sic].

(6) La comunicación entre el contador público autorizado y su cliente puede ser divulgada por mandato de ley o por razón de interés público apremiante.

(D) Cuando dos o más personas se unen como clientes de un mismo contador público autorizado en cuanto a un asunto de interés común entre ellas, ninguna podrá renunciar al privilegio sin el consentimiento de las otras. 32 LPRA ant. sec. Ap. IV, R. 25-A.

> el mencionado privilegio sea insertado en el Capítulo V sobre privilegios reconocidos en nuestro derecho procesal. A la misma vez, es conveniente incorporar el privilegio del contador público autorizado y su cliente en el contexto normativo de otros privilegios similares reconocidos en nuestro esquema jurídico. La enmienda propuesta define claramente el alcance del privilegio y elimina de un estatuto de carácter sustantivo como lo es la Ley de Contabilidad Pública, lo que por adecuada codificación debe estar incorporado en las Reglas de Evidencia aplicables a los Tribunales de Justicia de Puerto Rico.
>
> El fin principal de nuestro derecho procesal, que es en última instancia el descubrimiento de la verdad en los procesos judiciales queda salvaguardado con la legislación propuesta. Esta legislación precisa el alcance del privilegio y se le reconoce al contador público que presta sus servicios como al cliente que los necesita. Exposición de Motivos, Ley Núm. 124-1994 (1994 (Parte 2) Leyes de Puerto Rico 1229-1230).

Según se puede apreciar de lo manifestado por la Asamblea Legislativa, su propósito al aprobar este estatuto era lograr cohesión en la codificación de las reglas procesales probatorias, específicamente las de privilegios.

Sobre la entonces recién añadida Regla 25-A de Evidencia, el profesor Chiesa Aponte comentó:

> Esta […] sigue muy de cerca —tal vez demasiado cerca— las disposiciones de la Regla 25 sobre el privilegio de las comunicaciones al abogado[…]. Hay dos aspectos centrales en esta regla. En primer término, el poseedor del privilegio es el cliente —como debe ser— y no el contador, como se establecía en el privilegio creado en la Ley de Contabilidad. En segundo lugar, se dispone que la comunicación confidencial —según definida en el apartado (A)(2) de la Regla— puede ser divulgada "por razón de interés público apremiante". Esto

convierte al privilegio en uno cualificado, sujeto al balance de intereses […]. Chiesa Aponte, *Tratado de*

*Derecho Probatorio: Reglas de Evidencia de Puerto Rico y federales, op. cit.*, pág. 317.

Esta disposición reglamentaria sobre el privilegio CPA-cliente se mantuvo vigente hasta que, en 2009 se aprobaron las Reglas de Evidencia actuales mediante *In re* Aprobación de las Reglas de Evidencia, 175 DPR 478 (2009) (*Resolución*). Así, esta Curia remitió a la Asamblea Legislativa un Proyecto de Reglas de Evidencia —preparado por el Comité Asesor Permanente de Reglas de Evidencia—, y fue aprobado mediante la Ley Núm. 46-2009, de conformidad con el trámite dispuesto en el Artículo V, Sección 6 de la Constitución de Puerto Rico. Art. V, Sec. 6, Const. PR, LPRA, Tomo 1. Cabe notar que sirvieron de modelo al cuerpo de normas probatorias vigentes, las Reglas Federales de Evidencia, aunque la Regla 504, que contempla el privilegio CPA-cliente, no tiene equivalente en las referidas reglas federales.

La Regla 504 estatuye el privilegio CPA-cliente de la siguiente forma:

Regla 504. Relación contadora o contador público autorizado y cliente.

(a) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:

(1) Contadora o contador público autorizado —Toda persona que posea una licencia para dedicarse a la práctica de la contabilidad en Puerto Rico o en los Estados Unidos de América.

(2) Cliente — Persona natural o jurídica que consulta a una contadora o contador público autorizado, o a quien creyó con autorización para ejercer la profesión de la contabilidad, con el propósito de contratarle o de obtener servicios en su capacidad profesional.

(3) Comunicación confidencial — Aquélla habida entre una contadora o contador público autorizado — incluyendo a las personas que son sus asociadas, ayudantes y empleadas de oficina— y su cliente en relación con alguna gestión profesional, realizada en el ejercicio de la profesión de contabilidad, basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación.

(b) Sujeto a lo dispuesto en esta regla, la persona cliente —sea o no parte en el pleito o acción— tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su contadora o contador público autorizado. El privilegio puede ser invocado sólo por quien posee el privilegio, que es la persona cliente.

(c) No existe privilegio bajo esta regla si:

(1) Los servicios a la contadora o contador público autorizado fueron solicitados y obtenidos para permitir o ayudar a cualquier persona a cometer o planear la comisión de un delito o un fraude.

(2) La comunicación es pertinente a una controversia relativa a una violación de los deberes mutuos que surjan de la relación contadora o contador público autorizado y cliente.

(3) La comunicación es pertinente a una materia de común interés para dos o más clientes de la contadora o contador público autorizado, en cuyo caso una de las personas clientes no puede invocar el privilegio contra las otras.

(4) El contenido de la comunicación se le requiere durante un procedimiento civil o penal bajo la Ley de Armas, Ley de Sustancias Controladas, Ley de Explosivos, Ley contra el Crimen Organizado, las disposiciones del Código Penal y las leyes especiales sobre estas materias.

(5) Las normas que regulan la profesión de la contabilidad requieren que se divulgue la comunicación.

(6) La comunicación entre la contadora o contador público autorizado y su cliente puede ser divulgada por mandato de ley o por razón de interés público apremiante.

(d) Cuando dos o más personas se unen como clientes de la misma contadora o el mismo contador público autorizado en cuanto a un asunto de interés común entre ellas, ninguna podrá renunciar al privilegio sin el consentimiento de las otras. 32 LPRA Ap. VI, R. 504.

Adoptada esta nueva disposición reglamentaria, el profesor Chiesa Aponte resaltó que

[esta] regla […] no altera de modo significativo la regulación del privilegio bajo la regla 25 (A) de 1979. Se sigue muy de cerca la regulación del privilegio de las comunicaciones entre abogado y cliente, con las diferencias de rigor. **Aquí el interés es fomentar la más franca comunicación entre contador y cliente.** La imbricación entre asesoramiento legal y asesoramiento contable es de fino trazado. Si puede decirse que se trata de asesoramiento legal, el poseedor del privilegio —el cliente— debe optar por

el privilegio de abogado-cliente, que es incondicionado. Adviértase que en la regla 504 ([c]) (6) se establece que el tribunal tiene discreción para no reconocer el privilegio **por razón de interés público apremiante**.

[…] La presencia de terceras personas necesarias para el asesoramiento no es impedimento para que se reconozca el privilegio; **esto incluye los asesores, ayudantes y empleados del contador**. Se requiere expectativa de confidencialidad, lo que se desvanece con la presencia de terceros que nada tienen que ver con el asesoramiento.
(Énfasis nuestro).   E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. *Situm*, 2016, págs. 133-134.

Acerca de las excepciones al privilegio CPA-cliente del apartado (c), en lo pertinente, destacó lo siguiente:

En el apartado ([c]) se establecen las excepciones al privilegio, muy parecidas a las del privilegio abogado-cliente. Estas excepciones son:

(1) Cuando el asesoramiento es solicitado para cometer delito o fraude. Esto es también de muy fino trazado, pues el cliente solicita asesoramiento para salir lo menos maltrecho ante sus obligaciones contributivas. Una cosa es solicitar cómo pagar lo menos posible en la planilla o si tengo derecho a determinada exención o deducción, lo cual es perfectamente legítimo. Otra cosa es solicitar asesoramiento para defraudar a Hacienda o cómo "fabricar" un dependiente, etc.

.   .   .   .   .   .   .   .

(4) La comunicación es requerida en acción civil o penal bajo las leyes especiales a las que se alude en el apartado ([c])(4) o bajo el
Código Penal. **Esto obedece a un juicio de política pública de que el interés público en que aflore la verdad en acciones bajo esas leyes supera sustancialmente al interés en mantener confidenciales las comunicaciones entre contador y cliente.**

.    .    .    .    .    .    .    .

> (6) Cláusula residual: la comunicación debe ser revelada para evitar un fracaso de la justicia o, para usar el texto del apartado ([c])(6), "por razón de interés público apremiante". Esto tal vez es la nota distintiva de este privilegio: la discreción del tribunal para no reconocerlo y exigir que se divulgue la comunicación. […]. (Énfasis suplido). <u>Íd.</u>, págs. 134-135.

Por su parte, el comentarista Emmanuelli Jiménez indica sobre el apartado (c)(4) que:

> […] La número (4) es una excepción que no tiene equivalente en el privilegio abogado o abogada-cliente al limitar el privilegio por razón de materia jurídica y espec[í]fica pues no aplica a procedimientos civiles o penales de las leyes de armas, sustancias controladas, explosivos, crimen organizado, todas las disposiciones del código penal y las leyes especiales que aborden las mismas materias. **Esta excepción prácticamente sólo deja el privilegio para los casos civiles no relacionados a leyes penales.** (Énfasis suplido). R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. *Situm*, 2015, pág. 277.

Examinado el trasfondo local del privilegio CPA-cliente, a continuación repasamos el tratamiento brindado a éste en el ámbito federal y estatal.

### ii. Estados Unidos

### a. Jurisdicción federal

A nivel federal, el privilegio CPA-cliente no se encuentra reconocido en las Reglas Federales de Evidencia. Véase Fed. R. Evid. 501, 502. Cónsono con lo anterior, en <u>Couch v. United States</u>, 409 US 322 (1973), el Tribunal Supremo de Estados Unidos sentenció que "no confidential accountant-client privilege exists under federal law, and

no state created privilege has been recognized in federal cases." Íd., pág. 335. Véase, además, United States v. Arthur Young & Co., 465 US 805, 817 (1984).[40]

A su vez, se ha señalado que en asuntos que involucran la jurisdicción federal, los tribunales federales se adhieren al *common law* y no reconocen los estatutos estatales que crean un privilegio de CPA-cliente. Véanse: Couch v. United States, *supra*; R.J. Tepper, *New Mexico's Accountant-Client Privilege*, 37 N.M. L. Rev. 387, 400-401 (2007); Díaz Olivo, *supra*, págs. 101-102.

No obstante, en acciones y procedimientos civiles, respecto a los cuales la ley estatal proporciona la norma aplicable a un elemento de la causa de acción o una defensa, los privilegios se determinarán de conformidad con la ley estatal. Véanse: Colorado State Bd. of Accountancy v. Raisch, 960 P.2d 102, 106 esc. 3 (1998); Fed. R. Evid. 501. Por ejemplo, en casos de jurisdicción por diversidad de ciudadanía, los tribunales federales aplican la ley del estado donde se ventilan los procedimientos, si ésta reconoce un privilegio CPA-cliente. Véanse, además: Tepper, *supra*, págs. 400-401; Díaz Olivo, *supra*, pág. 102.

Por su parte, cabe resaltar que tanto en el Servicio de Rentas Internas como en los tribunales federales se

---

[40] Véase, también, Anotación, *Privileged Communications Between Accountant and Client — General Principles, Evidentiary Considerations, and Attorney - Client Privilege Implications*, 26 ALR7th Art. 3 (2017) ("It is well-established that no accountant-client privilege existed at common law. Many jurisdictions have enacted statutes creating an accountant-client privilege.").

reconocen las mismas protecciones de confidencialidad del *common law* aplicables a las comunicaciones entre contribuyentes y un abogado, así como a las comunicaciones entre contribuyentes y cualquier otro profesional de impuestos autorizado por el gobierno federal. Ahora bien, la protección no aplicará a asuntos de naturaleza criminal ni a comunicaciones escritas concernientes a paraísos o refugios fiscales, cuyo propósito principal sea la elusión o evasión de contribuciones sobre ingresos federales.[41] A

---

[41] Al respecto, el Internal Revenue Code dispone como sigue:

§ 7525. Confidentiality privileges relating to taxpayer communications

(a) Uniform application to taxpayer communications with federally authorized practitioners.--
(1) General rule.--With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.
(2) Limitations.--Paragraph (1) may only be asserted in--
(A) any noncriminal tax matter before the Internal Revenue Service; and
(B) any noncriminal tax proceeding in Federal court brought by or against the United States.
(3) Definitions.--For purposes of this subsection--
(A) Federally authorized tax practitioner.--The term "federally authorized tax practitioner" means any individual who is authorized under Federal law to practice before the Internal Revenue Service if such practice is subject to Federal regulation under section 330 of title 31, United States Code.
(B) Tax advice.--The term "tax advice" means advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice described in subparagraph (A).

pesar de que el Congreso ha promulgado este privilegio, es de aplicabilidad limitada y se refiere sólo al asesoramiento legal prestado por el profesional contributivo. Véanse: 26 USC sec. 7525; E.J. Imwinkelried, *The New Wigmore: Evidentiary Privileges*, Sec. 6.2.5 (3ra ed. 2020), Thomson Reuters; Tepper, *supra*, pág. 400.

### b. Jurisdicciones estatales

Es importante destacar que el privilegio CPA-cliente es una criatura puramente estatal. Imwinkelried, *op. cit.* Dado a que este privilegio no existe en el *common law* moderno, la mayoría de las jurisdicciones han rehusado reconocerlo. Íd. Aun así, éste goza de apoyo sustancial, dado que las comunicaciones realizadas a los contadores públicos autorizados son privilegiadas en aproximadamente más de un tercio de los estados que han promulgado legislación codificando el privilegio. Íd.; 1 McCormick on Evid. sec. 76.2 (8va ed. 2020), Thomson Reuters. La manera en que las jurisdicciones regulan este privilegio no es uniforme. Ello, debido a que "[t]he pattern varies

---

(b) Section not to apply to communications regarding tax shelters.--The privilege under subsection (a) shall not apply to any written communication which is--
(1) between a federally authorized tax practitioner and--
(A) any person,
(B) any director, officer, employee, agent, or representative of the person, or
(C) any other person holding a capital or profits interest in the person, and
(2) in connection with the promotion of the direct or indirect participation of the person in any tax shelter (as defined in section 6662(d)(2)(C)(ii)). 26 USC sec. 7525.

radically from state to state: '[t]he statutes range from a one-sentence statement of the privilege to detailed legislative schemes replete with specific definitions and exceptions.'" Imwinkelried, *op. cit.* Ahora bien, dado a la ambigüedad en la redacción de algunos de los estatutos, existen diferencias entre los comentaristas en cuanto al número exacto de estatutos que, en efecto, pudiesen interpretarse como que crean un privilegio. Íd. esc. 290 ("Given the ambiguity of the wording of some of the statutes, the commentators differ over the precise number of statutes that should be interpreted as creating true privileges.").

Algunos de los estados que, en efecto, reconocen el privilegio CPA-cliente lo hacen: 1) al consignarlo expresamente como un privilegio evidenciario en un cuerpo codificado de normas probatorias —como ocurre en Puerto Rico, según discutido—;[42] 2) al estatuirlo en la

---

[42] Véanse, por ejemplo: Idaho Rules of Evidence, Rule 515, I.R.E. 515 (ID R REV Rule 515); La. Code Evid. Ann. Art. 515, LSA-C.E. Art. 515; Nev. Rev. Stat. Ann. Secs. 49.125-49.205, N.R.S. 49.125-49.205; Okla. Stat. Ann. tit. 12, Sec. 2502.1 (12 Okl.St.Ann. § 2502.1).

Las disposiciones estatutarias pertinentes de Idaho, Luisiana, Nevada y Oklahoma conceden al cliente el privilegio de rechazar la divulgación o descubrimiento de comunicaciones confidenciales entre éste y un contador público autorizado, efectuadas con el propósito de facilitar la prestación de servicios o asesoría profesionales de contabilidad. Los estados mencionados, incluso protegen categóricamente las comunicaciones entre un contador público autorizado y sus representantes, ayudantes o empleados; excepto Oklahoma que, aunque no concede esta protección expresamente, sí considera confidenciales las comunicaciones dirigidas a aquellos a quienes se divulga para promover la prestación de los servicios de contabilidad al cliente y a los que fueran razonablemente necesarios para la transmisión de la comunicación. Véanse: Idaho Rules of Evidence, Reglas 515(a) y (b), I.R.E. 515(a) y (b); La. Code Evid. Ann. Arts. 515A(4) y B(2), LSA-C.E. Art. 515A(4) y B(2); Nev. Rev. Stat. Ann. Secs. 49.165-49.185, N.R.S. 49.165-49.185; Okla. Stat. Ann. tit. 12, Sec. 2502.1A(3) y B. Particularmente pertinente al caso de autos, los estados de Idaho y Luisiana hacen extensiva esta protección

sección de testigos ("witnesses") de sus reglas procedimentales para los tribunales;[43] y 3) al establecerlo en estatutos que, además de regular la profesión de contabilidad pública, también disponen un deber de confidencialidad y el reconocimiento de un privilegio probatorio.[44] Otras jurisdicciones únicamente estatuyen un deber ético de los contadores de mantener la confidencialidad.[45]

---

a las comunicaciones entre dos o más contadores públicos autorizados relacionadas al servicio profesional que le rinden al cliente. En concreto, ambos estatutos establecen de manera idéntica que el privilegio CPA-cliente existirá cuando la comunicación se dé "among accountants and their representatives representing the same client." Idaho Rules of Evidence, R. 515 (b) (5); La. Code Evid. Ann. Art. 515 (B)(5).

[43] Véanse, por ejemplo: Colo. Rev. Stat. Ann. Sec. 13-90-107(f)(I); Md. Code Ann., Cts. & Jud. Proc. Sec. 9-110; N.M. Stat. Ann. Sec. 38-6-6.

[44] Véanse, por ejemplo: Ariz. Rev. Stat. Ann. Sec. 32-749; Fla. Stat. Ann. Sec. 473.316; Ga. Code Ann. Sec. 43-3-29; 225 Ill. Comp. Stat. Ann. 450/27; Ind. Code Ann. Sec. 25-2.1-14-2; Kan. Stat. Ann. Sec. 1-401; Mich. Comp. Laws Ann. Sec. 339.732; Mo. Ann. Stat. Sec. 326.322; 63 Pa. Cons. Stat. Ann. Sec. 9.11a.

[45] Por esa razón, no forman parte del presente análisis sobre el privilegio CPA-cliente, dado a que éste es separado y distinto del deber ético de confidencialidad que regula a estos profesionales. M.R. Bartel, *Pennsylvania's Accountant-Client Privilege: An Asset with Liabilities*, 30 Duq. L. Rev. 613, 615 (1992) ("[P]rivileged communications are confidential, but not all confidential communications are privileged.").

El deber ético de los contadores públicos autorizados de preservar las confidencias de sus clientes está establecido en la Regla 1.700.001 del American Institute of Certified Public Accountants, Inc. (AICPA). En detalle, la referida regla dispone lo siguiente:

.01 A member in public practice shall not disclose any confidential client information without the specific consent of the client.

.02 This rule shall not be construed (1) to relieve a member of his or her professional obligations of the "Compliance With Standards Rule" [1.310.001] or the "Accounting Principles Rule" [1.320.001], (2) to affect in any way the member's obligation to comply with a validly issued and enforceable subpoena or summons, or to prohibit a member's compliance with applicable laws and government regulations, (3) to prohibit review of a member's professional practice under AICPA or state CPA society or

A la luz del derecho aplicable, pasemos entonces a resolver la controversia de autos.

**III**

Como vimos, el presente caso se originó como una demanda de naturaleza civil —desvinculada de asuntos o leyes penales— incoada por McNeil para impugnar presuntas deficiencias en el pago de patentes municipales notificadas por el Municipio. Sin embargo, la controversia que hoy abordamos no atiende los méritos o deméritos de la acción entablada, sino que se circunscribe a revisar una determinación interlocutoria, específicamente, la orden validada por los foros inferiores para que McNeil produzca un correo electrónico con información que estima privilegiada. Veamos.

---

Board of Accountancy authorization, or (4) to preclude a member from initiating a complaint with, or responding to any inquiry made by, the professional ethics division or trial board of the Institute or a duly constituted investigative or disciplinary body of a state CPA society or Board of Accountancy. Members of any of the bodies identified in (4) above and members involved with professional practice reviews identified in (3) above shall not use to their own advantage or disclose any member's confidential client information that comes to their attention in carrying out those activities. This prohibition shall not restrict members' exchange of information in connection with the investigative or disciplinary proceedings described in (4) above or the professional practice reviews described in (3) above. [Prior reference: paragraph .01 of ET section 301]

American Institute of Certified Public Accountants, Inc. (AICPA), *AICPA Code of Professional Conduct*, Regla 1.700.001 (Confidential Client Information Rule) (según enmendada hasta el 31 de agosto de 2016), págs. 124-125, https://www.aicpa.org/content/dam/aicpa/research/standards/codeofconduct/downloadabledocuments/2014december15contentasof2016august31codeofconduct.pdf (última visita, 30 de septiembre de 2020).

De los hechos previamente reseñados surge que durante los procedimientos que suscitaron la controversia, McNeil, como entidad jurídica, estaba representada por el CPA Rivera Matos en carácter de Asistente del Secretario de la empresa. Ante varios interrogatorios y requerimientos de producción de documentos emitidos por el Municipio, McNeil expresó que había hallado un correo electrónico entre el CPA Rivera Matos y la CPA Ramírez, el cual contenía la evaluación que el primero hiciera sobre "la declaración de volumen de negocio", y declinó descubrirlo por entender que estaba cobijado por el privilegio CPA-cliente.

Como es sabido, en nuestro ordenamiento jurídico quedarán excluidas del alcance del descubrimiento de prueba las materias que sean impertinentes; las que, aunque no lo sean, estén protegidas por alguno de los privilegios específicos reconocidos en nuestras Reglas de Evidencia; y las preparadas en contemplación de un litigio. 32 LPRA Ap. V, R. 23.1 y R. 23.3; <u>Ponce Adv. Med. v. Santiago González</u> *et al.*, *supra*, págs. 898-899.

No obstante, en el presente caso, tan pronto McNeil identificó la existencia del correo electrónico entre el CPA Rivera Matos y la CPA Ramírez, y le fue requerida la producción de éste, no sólo la objetó oportunamente al amparo del privilegio CPA-cliente contemplado en la Regla 504, sino que, además, describió que versaba sobre la evaluación de la declaración de volumen de negocios realizada por el CPA Rivera Matos concerniente a información sobre el ingreso y estados financieros de

McNeil durante los años en disputa. La descripción anterior fue suficiente para cumplir con los requisitos para el reclamo de un privilegio, según establecidos en la Regla 23.3 de Procedimiento Civil de 2009. 32 LPRA Ap. V, R. 23.3.

Acto seguido, el Municipio insistió extrajudicialmente con su requerimiento, pero McNeil reiteró su objeción. Esto dio lugar a la solicitud para compeler presentada por el Municipio ante el Tribunal de Primera Instancia. El foro primario denegó la oposición presentada por McNeil, lo cual tuvo el efecto de ordenar el descubrimiento, sin más, del correo electrónico. Por su parte, luego de algunas incidencias, el Tribunal de Apelaciones declinó expedir el recurso de *certiorari* presentado por McNeil, a pesar de que versaba sobre un asunto relativo a un privilegio evidenciario.

Bajo el presente escenario, al tomar en consideración el acervo citado de experiencias federales y estatales que confirma el origen puramente estatal del privilegio CPA-cliente en conjunto con la trayectoria del privilegio en la historia jurídica puertorriqueña hasta cristalizarse en nuestro ordenamiento probatorio, más el arraigado interés público de proteger la relación entre estos profesionales y sus clientes, es forzoso concluir que en nuestra jurisdicción existe estatutariamente el privilegio CPA-cliente, lo hemos reconocido y debe ser aplicado en aquellas situaciones meritorias. 32 LPRA Ap. VI, R. 504; Arthur Young & Co. v. Vega III, *supra;* Rodríguez v.

Scotiabank de Puerto Rico, *supra*; Ramírez Mas v. Tribunal Superior, *supra*. Por consiguiente, determinamos que las actuaciones de los foros inferiores fueron erradas y no tomaron en consideración el derecho vigente ni la política pública que lo sustenta.

En primer lugar, ante las discrepancias suscitadas entre las partes con relación a la existencia o alcance del privilegio CPA-cliente, le correspondía al foro primario examinar si McNeil —además de reclamarlo oportunamente— estableció *prima facie*, mediante preponderancia de la prueba, los elementos necesarios para su aplicación, acorde con la Regla 504. De los hechos establecidos podemos constatar que McNeil consultó y contrató los servicios profesionales del CPA Rivera Matos y de la CPA Ramírez para que atendieran sus asuntos contributivos ante el Departamento de Hacienda y el Municipio. La definición de cliente de la Regla 504 incluye a personas jurídicas como McNeil y les otorga el privilegio de rehusar revelar, o impedir que otra persona revele, las comunicaciones confidenciales habidas entre sus oficiales y los contadores públicos autorizados de los cuales obtuvo servicios profesionales. De igual modo, dicha regla cataloga como comunicación confidencial aquélla habida entre un contador público autorizado "—incluyendo a las personas que son sus asociadas, ayudantes y empleadas de oficina—" y su cliente, relacionadas con "alguna gestión profesional, realizada en el ejercicio de la profesión de contabilidad, basada en la confianza de

que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación". 32 LPRA Ap. VI, R. 504. Por cuanto, independientemente se interprete que las gestiones profesionales efectuadas por el CPA Rivera Matos a favor de McNeil se realizaron como oficial de la empresa y, por ende, en capacidad de cliente, o en calidad de profesional de la contabilidad, lo importante es que fue establecido que esa comunicación interna contiene evaluaciones profesionales de índole confidencial entre éste y otra contadora pública autorizada (*i.e.*, la CPA Ramírez —sea ésta o no una subalterna, asociada, ayudante o empleada), a favor de un cliente (es decir, McNeil). Lo anterior ocurrió dentro de un marco de confidencialidad que muy difícilmente pudiera presumirse que tenía el fin de ser divulgada a terceras personas. De otra parte, vemos que la Regla 504 no excluye de protección las comunicaciones realizadas entre contadores públicos autorizados que brindan servicios a las empresas que los emplean. 32 LPRA Ap. VI, R. 504. No obstante, por la similitud entre este privilegio y el de abogado-cliente, de manera análoga, deben estar protegidas dichas comunicaciones al igual que lo estaría si se tratara de un abogado corporativo ("in-house counsel"). Véase Upjohn Co. v. United States, 449 US 383, 395 (1981).**46**

---

**46** Véase, además, Anotación, *What corporate communications are entitled to attorney-client privilege—modern cases*, 27 ALR5th 76 (1995) ("It is universally accepted that in-house counsel are attorneys for purposes of the privilege, but because in-house counsel

Consecuentemente, concluimos que McNeil cumplió con el referido estándar probatorio.

En segundo lugar, ante dicho escenario, el foro primario debió catalogar el privilegio como uno condicional, dado que, distinto al privilegio abogado-cliente que es absoluto, el propio lenguaje de la Regla 504 le reconoce varias excepciones para su aplicación. Por lo tanto, el juzgador tenía que ejercer su discreción para efectuar un balance de intereses y determinar si concedía o no la protección, aunque se cumplieran con los elementos que constituyen el privilegio. Ponce Adv. Med. v. Santiago González *et al.*, *supra*, pág. 901; Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y federales, op. cit.*, pág. 317. En este caso particular, el balance de intereses para determinar la aplicabilidad del privilegio CPA-cliente, además de cerciorarse de que la objeción cumplió con la Regla 23.3 de Procedimiento Civil de 2009, con los principios generales aplicables a todo privilegio probatorio y que no es de aplicación alguna de las excepciones enumeradas en el estatuto, debía sopesar si el interés promovido por el privilegio CPA-cliente, ameritaba sacrificar el de descubrir evidencia pertinente.

A nuestro juicio, el Municipio no logró argumentar convincentemente la existencia de alguna de las

---

are often intimately involved in the corporation's business affairs, application of the privilege to their communications poses particular concerns").

excepciones contempladas en la Regla 504 para la denegatoria del privilegio. Máxime cuando en su solicitud para compeler el descubrimiento del correo electrónico en cuestión, entre otras razones ofrecidas, destacó genéricamente la existencia de "un interés público apremiante de fiscalizar, auditar e investigar", el pago de contribuciones y de "detectar fraude y encausar a aquellos contribuyentes que intencionalmente pretendan derrotar las contribuciones dispuestas por ley". Sin embargo, en vez de hacer referencia a hechos concretos, expresó que debía tener acceso al referido correo electrónico para indagar las motivaciones y discusiones de los contadores públicos autorizados porque éstas eran pertinentes para "develar" si la alegada omisión fue "inocente […] o […] producto de maquinaciones para la comisión de fraude".[47]

Como ha sido reiterado por este Tribunal en el pasado, el fraude no se presume y debe probarse mediante prueba clara, robusta y convincente, y no por inferencias, deducciones o meras conjeturas. Véase Pierluisi-Urrutia et al. v. CEE et al., 2020 TSPR 82, pág. 25 esc. 16. Además, el interés fiscalizador del Municipio se circunscribe a aquellas comunicaciones o documentos sin expectativas razonables de confidencialidad ante terceros. Es decir, existen ocasiones en que —como ocurre en el caso de autos— ese interés fiscalizador cede ante el interés

---

[47] *Solicitud de orden para compeler contestaciones a interrogatorios objetados*, *supra*, págs. 302-303.

de mayor envergadura de preservar la "naturaleza fiduciaria" en cualquier faceta de la gestión contable que implique la necesidad de preservar confidencias, para fomentar la más franca comunicación entre el contador público autorizado y su cliente. Arthur Young & Co. v. Vega III, *supra*, págs. 177-179; Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*, págs. 133-134. De lo contrario, se estaría minando la importante función social de los contadores públicos autorizados como auditores, asesores contributivos y asesores gerenciales o financieros en representación de los intereses económicos de sus clientes. En conclusión, determinamos que el correo electrónico en cuestión está protegido por el privilegio CPA-cliente y, por ende, no debe ser descubierto.

Finalmente, sólo resta destacar que, en adelante, luego de la norma previamente señalada, el foro apelativo intermedio deberá brindar mayor ponderación a los recursos interlocutorios que lleguen ante sí relacionados a asuntos relativos a privilegios evidenciarios, incluyendo pero sin limitarse al privilegio CPA-cliente, y no despacharlos livianamente. Esto, pues no hay momento más propicio para atender una controversia de esta índole que previo a que se obligue a descubrir información presuntamente privilegiada y que, como consecuencia de la desatención, inevitablemente pierda tal condición.

## IV

Establecida la aplicación del privilegio contador público autorizado-cliente al presente caso, se revocan la

*Resolución* del 14 de mayo de 2019 emitida por el Tribunal de Apelaciones y la *Orden* del 22 de enero de 2019 del Tribunal de Primera Instancia, y se devuelve el caso al foro primario para la continuación de los procedimientos acorde con lo resuelto en esta *Opinión*.

Se dictará *Sentencia* de conformidad.


                    ROBERTO FELIBERTI CINTRÓN
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

McNeil Healthcare, LLC

      Peticionario

         v.               CC-2019-533       *Certiorari*

Municipio de Las Piedras *et al.* [I]

      Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2021.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se revocan la *Resolución* del 14 de mayo de 2019 emitida por el Tribunal de Apelaciones y la *Orden* del 22 de enero de 2019 del Tribunal de Primera Instancia. Se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo resuelto en la *Opinión*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre y emite la expresión siguiente:

De entrada, reconozco la importancia y la aportación que tiene esta Opinión en el desarrollo del derecho probatorio puertorriqueño. De igual forma, coincido con el dictamen de este Tribunal, puesto que, en este caso particular, y bajo las circunstancias específicas en las que se ha desplegado el descubrimiento de prueba, procede reconocer el reclamo del privilegio invocado.

Ahora bien, albergo una preocupación principal en torno a la carga probatoria que

se le impone, en este caso al Municipio de Las Piedras, para poder prevalecer en la aplicación de la excepción contenida en el inciso (1) de la Regla 504 de Evidencia, 32 LPRA Ap. VI. Ante esa preocupación, me veo privado de no poder impartir mi conformidad a la totalidad de la ponencia. Aunque reconozco que, en este caso particular, el Municipio de Las Piedras no logró demostrar la inaplicabilidad del privilegio contadora o contador público autorizado y cliente, aun bajo un estándar de prueba menor al aquí exigido.

Además, no podemos perder de perspectiva que, en este tipo de controversias judiciales, tanto el Estado como los municipios están en una posición ventajosa en términos de su capacidad de administración, auditoría y fiscalización en la imposición de contribuciones. En ese sentido, en la controversia que nos ocupa es una realidad de que el Municipio cuenta con amplia documentación para poder litigar efectivamente sin la necesidad de las comunicaciones electrónicas privilegiadas que interesaba obtener. Lo anterior, basado en los amplios poderes de recopilación de información contributiva y financiera conferidos en virtud de la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, 21 LPRA sec. 651 et seq.

De esta manera, reconozco que las entidades públicas tienen a su haber otras vías para poder perseguir el fraude contributivo e imponer las consecuencias jurídicas apropiadas si surgiera alguna situación que así lo amerite.

Por los fundamentos anteriormente expuestos, concurro respetuosamente con la determinación emitida por una Mayoría de este Tribunal.

La Jueza Presidenta Oronoz Rodríguez no interviene.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo